IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| CATHY M. LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:23-cv-02196-DCN |
| vs. ) | |
| ) | ORDER |
| MARTIN O'MALLEY,[1] ) | |
| *Commissioner of the Social Security* ) | |
| *Administration*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Magistrate Judge Kaymani D. West's report and recommendation ("R&R"), ECF No. 27, that the court affirm the Commissioner of Social Security's (the "Commissioner") decision denying claimant Cathy M. Lewis's ("Lewis") application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I. BACKGROUND

**A. Procedural History**

Lewis filed an application for DIB on September 16, 2015, alleging that she has been disabled since March 6, 2015. ECF No. 7, Tr. 194–95. She later amended her disability onset date to January 1, 2017. ECF No. 18 at 2 n.1, Lewis v. Saul, No. 5:19-cv-02298-DCN-KDW (D.S.C. May 18, 2020). The Social Security Administration (the

---

[1] Martin O'Malley was sworn in as Commissioner of Social Security on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), he is substituted as the defendant in this case.

1

"SSA") denied Lewis's application initially, Tr. 77, and upon reconsideration, Tr. 98. Thereafter, Lewis requested a hearing before an administrative law judge ("ALJ"), and ALJ Tammy Georgian held a hearing on April 24, 2018, during which Lewis and a vocational expert ("VE") testified. Tr. 35–58, 118–19. The ALJ issued an unfavorable decision on August 31, 2018, finding that Lewis was not disabled. Tr. 21–28. Lewis requested review of the ALJ's decision, which the Appeals Council denied on June 12, 2019, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. 1–6.

On August 15, 2019, Lewis filed her first complaint in this court seeking judicial review of the Commissioner's decision. Tr. 570–71. Pursuant to 28 U.S.C. § 636 and Local Civil Rule 73.02(B)(2)(a) (D.S.C.), the matter was referred to Magistrate Judge West, who recommended that the Commissioner's decision be affirmed. Tr. 572–91. However, on March 18, 2021, this court issued an order declining to adopt the magistrate judge's recommendation. Tr. 593–600; Lewis v. Saul, No. 5:19-cv-02298-DCN (D.S.C. Mar. 18, 2021). The court found that the ALJ's first decision was not supported by substantial evidence because the ALJ did not discuss any medical evidence in the record from prior to Lewis's alleged disability onset date. Tr. 598-600. Thus, the court reversed the Commissioner's decision and remanded the matter to the Commissioner with instructions "to consider all relevant evidence of record, including pre-disability onset date evidence prior to making Lewis' disability determination." Tr. 600.

Lewis declined to have another administrative hearing, Tr. 692, 727, and ALJ Georgian issued a second unfavorable decision on February 14, 2023, Tr. 520–37. The ALJ's second decision became the final decision of the Commissioner after remand. See

Tr. 521 (explaining that the ALJ's decision becomes final within 60 days if the Appeals Council does not review the decision).

On May 23, 2023, Lewis filed this action seeking review of the Commissioner's decision. ECF No. 1, Compl. The action was referred again to Magistrate Judge West, who issued the R&R recommending that the Commissioner's decision be affirmed. ECF No. 27, R&R. Lewis objected to the R&R on July 5, 2024, ECF No. 28, and the Commissioner responded to Lewis's objections on July 18, 2024, ECF No. 29. As such, the matter is fully briefed and is now ripe for the court's review.

### B. Medical History

The parties are familiar with Lewis's medical history, the facts of which are ably recited by the R&R. R&R at 4–6. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Lewis's objections to the R&R. Lewis alleges a disability onset date of January 1, 2017, at which time she was sixty-two years old. See Tr. 79; ECF No. 18 at 2 n.1, Lewis, No. 5:19-cv-02298-DCN-KDW. She specifically alleges a disability due to the following conditions: (1) neck pain, (2) back pain, (3) left arm pain, (4) digestive disorders, (5) bilateral hearing loss, (6) foot and ankle pain, (7) allergies, (8) hypertension, (9) anxiety, and (10) depression. Tr. 227. As of Lewis's October 5, 2015 Disability Report, Lewis reported that she was still working as a deli clerk at Harris Teeter. Tr. 229. She testified in her administrative hearing that her ability to work began to decline in March 2015 due to her foot pain. Tr. 41–42. Lewis obtained her GED in 2000 and has not completed any specialized job training, trade, or vocational school. Tr. 228. She has additional past work experience as a housekeeper and drywall worker. Tr. 229.

### C. The ALJ's Second Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity ("RFP")) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Lewis was disabled, the ALJ employed the statutorily required five-step evaluation process in her February 14, 2023 decision. Tr. 523–537. At the first step, the ALJ found Lewis did not engage in substantial gainful activity during the period between her amended alleged onset date of January 1, 2017, through her date last insured of December 31, 2019. Tr. 525. At the second step, the ALJ found that Lewis "has the following severe impairment: osteoarthritis (20 CRF 404.1520(c))." Tr. 526. At step three, the ALJ found that Lewis does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the Agency's Listing of Impairments. Tr. 529. Before reaching the fourth step, the ALJ determined that, through the date last insured, Lewis "had the residual function capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except that [she] can frequently sit, stand, and walk, can frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds, and can frequently stoop kneel, crouch, and crawl." Tr. 529. At the fourth step, the ALJ found that "[t]hrough the date last insured, [Lewis] was capable of performing past relevant work as a cleaner, housekeeping, DOT # 323.687-014, SVP 2, light and deli clerk, DOT # 290.477-018, SVP3, light." Tr. 537. The ALJ did not reach step five but concluded that Lewis was not disabled under the meaning of the Act. Tr. 537.

## II. STANDARD

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The

recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). Further, although the court

will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Id. at 517.

### III. DISCUSSION

Lewis raised two issues in her initial brief. First, she argued that the ALJ failed to comply with this court's March 18, 2021 remand order because the ALJ "failed to fully consider all relevant evidence of record, including all pre-disability onset date evidence, as instructed by the court." ECF No. 17 at 10–15 (emphasis omitted). Second, Lewis argued that the ALJ erred by failing to consider and address Lewis's medical treatment at Orthopaedic Specialists of Charleston for bilateral foot impairments when making her findings regarding Lewis's RFP. Id. at 15–16. The magistrate judge recommended finding for the Commission on both of these issues, R&R at 11–21, and Lewis objects to both of those conclusions, ECF No. 28 at 2–8. The court will take each issue in turn.

**A. The ALJ's Consideration of Pre-Disability Onset Date Medical Evidence**

In her initial brief, Lewis conceded that the ALJ did consider and discuss "pre-onset date medical evidence relating to Lewis's consultative examinations with Dr. William Maguire on January 25, 2016 and Dr. Cashton Spivey on January 27, 2016." ECF No. 17 at 12. However, Lewis argued that "it is again not clear to what extent [the ALJ] considered and analyzed the pre-disability onset date medical evidence pertaining to [Lewis's] medical treatment at Orthopaedic Specialists of Charleston in May and June,

7

20[16] for her bilaterial . . . foot pain with Dr. [Joshua] Lamb [("Dr. Lamb")] and Dr. Blake Ohlsen [("Dr. Ohlsen")]." Id. at 12–13.

Lewis visited Orthopaedic Specialists of Charleston on three occasions: May 9, 2016, June 13, 2016, and July 6, 2016.[2]  Tr. at 458–65.  Records from these visits are included in Exhibit 7F.  Tr. 453–65.  During the May 9, 2016 visit, Lewis saw Dr. Lamb about her bilateral foot pain.  Tr. 463.  As part of his general examination, Dr. Lamb noted an "[a]ntalgic gait," and Dr. Lamb was concerned that Lewis "may be suffering from a stress fracture to the second metatarsal right foot and from midfoot arthritis on the left foot over the first tarsometatarsal joint."  Tr. 464.  An x-ray revealed "no evidence of fracture or dislocation," and Dr. Lamb recommended that Lewis take NSAIDs for pain, wear soled shoes, ice her foot, and schedule a follow-up to discuss MRI results in one to two weeks.  Tr. 464.

Lewis returned to see Dr. Lamb again during the June 13, 2016 visit.  Tr. 460–62. Dr. Lamb noted that Lewis had "[a]bnormal MRI" results and made the following impressions of the MRI results from Lewis's left foot:

> Moderate tendinopathy and likely partial thickness tearing of the distal tibialis anterior tendon at its insertion on the medical cuneiform and base of the first metatarsal.  Mild underlying likely stress-related edema in the medial cuneiform without discrete fracture line.  Mild surrounding soft tissue edema which tracks along the proximal first metatarsal.

Tr. 461.  He also noted the following impression of the MRI results from Lewis's right foot:

---

[2] The magistrate judge outlined the evidence in the record pertaining to the visits Lewis had with Drs. Lamb and Ohlsen at Orthopaedic Specialists of Charleston in May and June 2016, and Lewis does not object to the magistrate judge's recitation.  R&R at 12–14; see ECF No. 28 at 2–6.  The court recounts the evidence in the record here only for purposes of aiding an understanding of the court's reasoning.

8

> Effacement of the fat within the web space at the level of the second and third MTP joints and base of the second and third proximal phalanges. Mild underlying bone marrow edema in the adjacent second and third metatarsal heads. Finding is somewhat atypical location but given appearance, finding is most suggestive of neuroma. Scar/fibrosis related to prior trauma could have a similar appearance.

Tr. 461. Dr. Lamb counseled Lewis on a home exercise program and discussed her MRI results with her. Tr. 461. Dr. Lamb also noted that Lewis stated that she "is doing better and that her main difficulty is wearing the shoes required by her job," and he gave Lewis a note stating that "she can wear her home shoes which she feels is adequate to deal with her pain." Tr. 461.

During the July 6, 2016 visit, Lewis saw Dr. Ohlson. Tr. 458–59. Lewis reported that her change in footwear had not mitigated her symptoms and that her symptoms were worsening with increased activity. Tr. 458. Dr. Ohlson conducted an orthopedic examination and recorded the following results:

> No significant hallux valgus deformity no significant heel cord tightness mild elevated arch height with callus formation tenderness beneath second MTP joint with early crossover toe deformity. Deformity worse on the right. Right second toe also shows early rigid hammertoe formation.

Tr. 458. Dr. Ohlson further noted that Lewis's most recent x-rays "show evidence of prior tibia fracture in the past with moderate traumatic degenerative changes left ankle. Bilateral views of the feet show early incongruency second MTP joint with slight crossover toe deformity right worse than left." Tr. 458. Dr. Ohlson determined Lewis likely had a toe deformity in both feet and discussed the possibility of surgery with her. Tr. 459. He noted that "[f]inancial constraints precludes this patient from being able to pursue surgical intervention given the time required to recover. However, should this change we discussed tentative surgical intervention as a more permanent means of

9

deriving pain relief." Tr. 459. Dr. Ohlson then described the potential risks of surgery and recommended that Lewis follow up as needed. Tr. 459.

In her decision, the ALJ mentioned that Lewis complained of bilateral metatarsalgia and crossover toe deformity. Tr. 526. However, the ALJ cited to Exhibit 7F only once in her decision. See Tr. 523–37. The entirety of her discussion of these records is contained in the following paragraph, which comes from the ALJ's discussion under step two:

> On report of bilateral foot pain at an orthopedic visit on July 6, 2016, imaging revealed early incongruency at the second MTP joint with slight crossover toe deformity right worse than left (Exhibit 7F). No significant hallux valgus deformity was seen and there was no significant heel cord tightness. The claimant reported working at a local grocery store and spending several hours a day on her feet. She had normal motor strength throughout and intact sensory exam. The claimant denied abdominal pain, diarrhea, nausea, vomiting, anxiety, depression, balance difficulty, and headaches. She was advised of conservative treatment options including using a metatarsal pad. While surgery was discussed, the claimant stated that she was unable to afford interventional treatment and it was not noted to be medically necessary at this time. The claimant was not advised to elevate her legs, stay off her feet, or stop working secondary to this condition. I note that the claimant has sought no additional treatment for her feet since her mid-2016 visit when she was still engaged in substantial gainful activity. 2017 and 2018 treatment notes from Dr. Cain, the claimant's primary treating physician, includes no evidence of significant osteoarthritis in the claimant's feet, back, or other joints causing neurological or musculoskeletal limitations.

Tr. 527.

The magistrate judge found that the ALJ adequately discussed and considered this medical evidence. R&R at 15–17. The magistrate judge noted that the ALJ specifically discussed Dr. Ohlson's treatment record from the July 6, 2026 visit in detail, noted that Dr. Ohlson did not advise Lewis to stay off her feet or refrain from work, and that Lewis has not sought follow up treatment. Id. at 13–14.

The magistrate judge also addressed Lewis's contention that the ALJ did not discuss Dr. Lamb's notes from the May 9, 2016 visit or the June 13, 2016 visit. Id. at 14–17. While the ALJ did not mention Dr. Lamb by name or mention his notes regarding Lewis's antalgic gait or specific MRI results, the magistrate judge noted that the ALJ did reference imaging of Lewis which "revealed early incongruency at the second MTP joint with slight crossover toe deformity right worse than left (Exhibit 7F)." R&R at 15 (citing Tr. 527). The magistrate judge agreed with Lewis that an ALJ cannot "cherry pick" portions of evidence to consider but also explained that the ALJ is not required to "specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered." Id. at 15–16. The magistrate judge disagreed with Lewis's contention that the ALJ had misstated Dr. Ohlson's conclusions regarding whether surgery was necessary. Id. at 15. Thus, the magistrate judge found that the ALJ had sufficiently considered all pre-onset medical evidence. Id. at 16. Beyond that, to the extent the ALJ's failure to mention every page of Exhibit 7F or mention Drs. Lamb and Ohlson by name was in error, the magistrate judge found that this was harmless error. Id. at 16–17.

In her first objection to the magistrate judge's R&R, Lewis maintains that the ALJ did not comply with this court's remand order because she did not adequately consider all of the pre-disability onset date evidence in the record. ECF No. 28 at 2–6. Specifically, Lewis contends that the ALJ ignored her visits with Dr. Lamb on May 9, 2016, and June 13, 2016, and the imaging that was taken and discussed at those appointments. Id. at 4. In so doing, Lewis argues that, "in addition to failing to mention Dr. Lamb, Dr. Ohlson,

11

and Orthopaedic Specialists of Charleston by name," the ALJ ignored evidence from her imaging and Dr. Lamb's progress notes that supports a finding that Lewis is disabled. Id. at 4–5. Lewis also continues to argue that, by mentioning only that "surgery was discussed" at her July 6, 2016 visit, the ALJ misstated Dr. Ohlson's conclusion regarding whether Lewis should have surgery. Id. at 5–6. Overall, Lewis reiterates that an ALJ cannot "cherry pick" portions of evidence that supports her conclusions, and she accuses the ALJ of doing just that. Id. at 6.

In response, the Commissioner begins by arguing that Lewis's first objection is not targeted at any errors in the magistrate judge's analysis and is therefore subject to clear error review. ECF No. 28 at 2. Then, as for the merits of Lewis's objection, the Commissioner contends that the ALJ did adequately consider all pre-onset date medical records, as required by the court's remand order. Id. at 2–5. Much like the magistrate judge, the Commissioner points to the ALJ's discussion of Lewis's foot pain and imaging, the ALJ's reference to Dr. Ohlson's diagnoses of bilateral metatarsalgia and crossover toe deformity, her reference to Dr. Ohlson's recommended treatment options, and her citation to Exhibit 7F. Id. at 3–4. The Commissioner argues that, under Fourth Circuit precedent, the ALJ is not required to discuss every piece of evidence in the record and therefore argues that the ALJ's analysis in this case was sufficient. Id. at 4–5.

The court agrees with the Commissioner that Lewis has not pointed to any specific defect in the magistrate judge's reasoning. Indeed, Lewis barely mentions the R&R at all in her objection and instead merely reiterates the same arguments she raised in her initial brief regarding her perceived defects with the ALJ decision. See ECF No. 28 at 2–6. In any event, to the extent her first objection is sufficient to trigger de novo

review, the court finds that the ALJ adequately considered all pre-disability onset date medical evidence.

It is true, as Lewis points out and as discussed in the R&R, ECF No. 28 at 6; R&R at 16, that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding," Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)). Moreover, "[t]he Fourth Circuit has found cherrypicking where it is clear the ALJ chose to ignore certain statements or facts, sometimes contained in the same medical report." Rediford B. v. Kijakazi, 2023 WL 9550461, at *9 (E.D. Va. Nov. 9, 2023) (collecting cases). It is also true, however, that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (quoting Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014)).

The court first notes that the paragraph quoted above from the ALJ's decision appears to discuss only Dr. Ohlson's notes from Lewis's July 6, 2016 visit. See Tr. 458–59, 527. The imaging the ALJ appears to be referring to are the x-rays discussed by Dr. Ohlson on the first page of his notes, and all the facts discussed by the ALJ appear in Dr. Ohlson's notes. Tr. 527. There are two implications of this determination. First, to the extent Lewis argues the ALJ's decision is inconsistent with Dr. Ohlson's notes, that portion of her objection is overruled because the court finds that the ALJ's description does not contradict Dr. Ohlson's notes.[3] See Tr. 458–59, 527. Second, Lewis is correct

---

[3] The ALJ mentioned that "[w]hile surgery was discussed, the claimant stated that she was unable to afford interventional treatment and it was not noted to be medically necessary at this time." Tr. 527. While Dr. Ohlson did state that he "discussed tentative

13

that the ALJ did not discuss Dr. Lamb's notes or the MRI results from her visits on June 13, 2016, and May 9, 2016. Still, the court finds that a remand is not necessary.

Even though the ALJ did not discuss Dr. Lamb's notes or the specific MRI results from her earlier visits, the court finds that the ALJ did not impermissibly "cherrypick" facts to support her decision. The facts mentioned in Dr. Lamb's two reports are largely similar with those mentioned in Dr. Ohlson's report. See Tr. 458–65. For instance, Dr. Ohlson and Dr. Lamb both discuss imaging showing issues with Lewis's MTP joint, and neither Dr. Lamb nor Dr. Ohlson conclude that Lewis's foot pain was severe enough to prevent her from doing her job. Tr. 458–65. To the extent anything in Dr. Lamb's reports is worse than anything reported by Dr. Ohlson, Lewis has not argued how these differences should have altered the ALJ's conclusions, and there is no reason to suspect that those differences would change the ALJ's decision. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (finding that the Commissioner's decision was based on the entire record and supported by substantial evidence when the claimant "failed to point to any specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim" (emphasis added)); Tanner v. Comm'r of Social Sec., 602 F. App'x 95, 101 (4th Cir. 2015) (affirming Commissioner's decision when "it [was] highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability").

---

surgical intervention [with Lewis] as a more permanent means of deriving pain relief," the ALJ was correct in stating that Dr. Ohlson never said surgery was medically necessary. See Tr. 459.

Beyond that, to the extent Lewis challenges the ALJ's conclusions based on her assessment of the evidence in the record, the court finds that the ALJ's decision is supported by substantial evidence. See Craig, 76 F.3d at 589; Wells v. Colvin, 2013 WL 4736866, at *2 (D.S.C. Sept. 3, 2013) ("Even assuming there is evidence in the record to support Plaintiff's argument, there is also substantial evidence in the record to support the ALJ's assessment of Plaintiff's RFC, which is all that is required."). For these reasons, the court overrules Lewis's first objection.

### B. Lewis's RFC

In her second objection, Lewis contends that the magistrate judge erred in finding that the ALJ's determination of Lewis's RFC was supported by substantial evidence. ECF No. 28 at 7–8. The ALJ made the following finding regarding Lewis's RFC:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual function capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can frequently sit, stand, and walk, can frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds, and can frequently stoop, kneel, crouch, and crawl.

Tr. 529. In her initial brief, Lewis argued that the ALJ's consideration of her RFC was insufficient because, as Lewis explained in her first objection, the ALJ failed to adequately consider the evidence regarding Lewis's three visits to Orthopaedic Specialists of Charleston. ECF No. 17 at 15–16.

The magistrate judge recommended affirming the ALJ's decision on Lewis's RFC for two reasons. R&R at 17–20. First, the magistrate judge noted that the ALJ stated that she "reviewed all evidence of record submitted by the claimant," id. at 18 (quoting Tr. 531), and the magistrate judge explained that "[a]bsent evidence to the contrary, the court takes the ALJ at her word," id. at 18–19. Second, the magistrate judge explained that the

court must review the ALJ's decision as a whole rather than assessing her discussion in each individual part separately. Id. at 19. Thus, because the magistrate judge found that the ALJ adequately discussed the evidence from Lewis's visits to Orthopaedic Specialists of Charleston in a different part of her decision, the court can conclude that she considered all of the evidence in reaching her determination on Lewis's RFC. Id. at 19–20.

In her objection, Lewis reiterates her argument that the ALJ's consideration of Lewis's RFC was inadequate because, for reasons she articulated in her first objection, the ALJ did not adequately consider the evidence of her visits at Othopaedic Specialists of Charleston. ECF No. 28 at 7–8. She also disagrees with the magistrate judge's determination that the court can accept the ALJ's word that she considered all of the evidence in the record. Id.

In response, the Commissioner argues that, like her first objection, Lewis's second objection should be subject to clear error review because she has not directed the court to any specific error in the magistrate judge's reasoning. ECF No. 29 at 5. The Commissioner then points to the ALJ's discussion of various medical records regarding Lewis's foot issues. Id. at 5–6. The Commissioner further argues that the ALJ's decision is supported by substantial evidence in the record and specifically points to the ALJ's consideration of Lewis's activities (such as going to the gym), which tend to show that Lewis was not disabled due to a foot problem. Id. at 6–7. The Commissioner notes that, in this appeal, Lewis has not challenged the ALJ's analysis on this evidence. Id. at 7. Finally, to the extent the ALJ was required to discuss each page of the evidence from Orthopaedic Specialists of Charleston, the Commissioner argues that the ALJ's decision

shows she considered this evidence for the same reasons the Commissioner argued in response to Lewis's first objection. Id. at 7.

"A Social Security claimant's RFC represents 'the most [she] can still do despite [her] limitations.'" Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 387 (4th Cir. 2021) (alterations in original) (quoting 20 C.F.R. § 416.945(a)(1)). The assessment of an individual's RFP must be based on "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). "'Remand may be appropriate' where the administrative law judge 'fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the [ALJ's] analysis frustrate meaningful review.'" Britt v. Saul, 860 F. App'x 256, 262 (4th Cir. 2021) (alteration omitted) (quoting Mascio v. Colvin, 780 F.3d 632, 262 (4th Cir. 2015)). If the ALJ considers all the evidence when assessing a claimant's limitations under step two, it does not frustrate meaningful review if the ALJ does not repeat that discussion when considering the claimant's RFC. Id.

As previously explained, the ALJ adequately discussed Dr. Ohlson's notes on Lewis's July 6, 2016 visit when considering Lewis's impairments at step two. See Tr. 527. Therefore, the fact that the ALJ did not mention this portion of the record when discussing Lewis's RFC does not frustrate meaningful review and does not make it necessary to remand this case. See Britt, 860 F. App'x at 262. Additionally, even if the ALJ did not discuss Dr. Lamb's notes, Lewis has not argued how the ALJ's consideration of Dr. Lamb's notes should have altered the ALJ's conclusion.[4] See ECF No. 28 at 7–8.

---

[4] To be clear, the court is not finding that the ALJ did not consider Dr. Lamb's notes. The ALJ states that she reached her determination on Lewis's RFC after careful consideration of the entire record, Tr. 529, and the court takes her word on this absent

Thus, much like in her first objection, Lewis has not given the court any reason to suspect that the ALJ's decision would be any different upon consideration of this evidence, and the court finds that the ALJ adequately considered the entire record. See Reid, 769 F.3d at 865; Tanner, 602 F. App'x at 101. Additionally, Lewis has not objected to the ALJ's consideration of any of the other evidence in the record, see ECF No. 28 at 7–8, and the court finds that the ALJ's determination is supported by substantial evidence, see Tr. 529–37; see also Craig, 76 F.3d at 589; Wells, 2013 WL 4736866, at *2. As such, Lewis's second objection is overruled, and the Commissioner's decision in affirmed.

### IV.   CONCLUSION

For the forgoing reasons, the court **ADOPTS** the R&R in full and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**September 24, 2024
Charleston, South Carolina**

---

evidence to the contrary, see Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word.").